**Robert Nmi MURRAY, dba: America Speaks, Plaintiff–Appellant,**

v.

**CABLE NATIONAL BROADCASTING COMPANY, dba: America's Talking, Defendant–Appellee.**

No. 95–55090.

United States Court of Appeals, Ninth Circuit.

Submitted June 4, 1996.*

Decided June 18, 1996.

As Amended Aug. 6, 1996.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.

R. 34–4 and Fed. R.App. P. 34(a).

Andrea R. Hartman, National Broadcasting Company, Burbank, California, for defendant-appellee.

Before FARRIS, FERNANDEZ and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Robert Murray ("Murray") contends CNBC, Inc. ("CNBC") improperly infringed on his registered trademark "America Speaks" by conducting opinion polling through its cable network "America's Talking." The district court dismissed Murray's complaint for trademark infringement, false designation of origin and unfair competition. We affirm.

## BACKGROUND

Murray videotapes "man-on-the-street" surveys for business clients. He has conducted surprise supermarket interviews for Maxwell House instant coffee and performed consumer surveys as the "Shell Question Man." Murray alleges he obtained a federal service mark registration for "America Speaks" and has operated his market research business under that name since October, 1992.

In July 1994, CNBC commenced a cable television network entitled "America's Talking." Murray contends the America's Talking network conducts interactive national polling surveys and distributes survey data to the news media. Although Murray has not conducted any interactive surveys, he claims he will in the future under the name "America Speaks" and had planned to do so prior to CNBC's use of interactive polling on America's Talking. Murray contends CNBC's use of interactive surveys is likely to cause confusion when he expands his "America Speaks" business to include interactive surveys.

R. Joseph Trojan, Trojan Law Offices, Beverly Hills, California, for plaintiff-appellant.

Murray sued CNBC for violation of 15 U.S.C. § 1114 (trademark infringement), 15

U.S.C. § 1125(a) (false designation of origin) and California unfair competition law. CNBC moved for dismissal pursuant to Fed. R.Civ.P. 12(b)(6). The district court granted the motion, but allowed Murray leave to amend his complaint. Murray filed an amended complaint and CNBC renewed its motion to dismiss. The district court granted the motion, finding as a matter of law that the services provided by CNBC and Murray were unrelated and there was no likelihood of consumer confusion.

Murray raises three issues on appeal: (1) whether this Court should overrule *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–791 (9th Cir.1981) as contradictory to *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir.1985) (en banc); (2) whether the district court erred in finding there was no likelihood of trademark confusion as a matter of law and (3) whether Murray alleged sufficient facts to support a claim of reverse confusion.

## STANDARD OF REVIEW

■ We review *de novo* dismissal of a complaint for failure to state a claim. *Oscar v. University Students Co-operative Assn.*, 965 F.2d 783, 785 (9th Cir.), *cert. denied* 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). Murray suggests that *Levi Strauss,* 778 F.2d at 1356, requires application of the clearly erroneous standard. However, in trademark confusion cases, the clearly erroneous standard applies when the district court has made a factual and legal determination of likelihood of confusion based on submitted evidence or stipulated facts. *Id. De novo* review is appropriate when the district court has found as a matter of law that the plaintiff's complaint fails to state a claim upon which relief may be granted. *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 885 (9th Cir.1996).

## DISCUSSION

### Likelihood of Trademark Confusion as a Matter of Fact or Law

■ To maintain an action for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C.

§ 1125(a) and unfair competition under California law, a plaintiff must prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion. *Levi Strauss,* 778 F.2d at 1354 (federal claims); *Tomlin v. Walt Disney Productions,* 18 Cal.App.3d 226, 235, 96 Cal.Rptr. 118, 123 (1971) (California claims). An eight factor test is employed to determine whether a "likelihood of confusion" exists. *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir.1993). If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed. *Toho,* 645 F.2d at 790–791.

■ Murray argues this Court must overrule *Toho* because "the underlying premise of the decision, namely that the issue of likelihood of confusion can be an issue of law, was expressly rejected by the Ninth Circuit when it decided that likelihood of confusion was an issue of fact in *Levi Strauss.*" He argues *Levi Strauss* requires all trademark confusion cases to be resolved by a jury. We disagree.

■ Murray asks us to do what we cannot: overrule a prior decision of this court. "[O]nly a panel sitting en banc may overturn existing Ninth Circuit precedent." *United States v. Camper,* 66 F.3d 229, 232 (9th Cir. 1995). Nor did *Levi Strauss* overrule *Toho*. In *Toho*, we held the use of "BAGZILLA" on garbage bags was unrelated as a matter of law to the protected literary and toy merchandising of "GODZILLA" and upheld the district court's dismissal for failure to state a claim. *Toho,* 645 F.2d at 790. *Levi Strauss* unified the standard of review in trademark confusion cases and held that findings of likelihood of confusion should be reviewed under the clearly erroneous standard. 778 F.2d at 1356. Previously, the standard of review differed depending on whether the district court had entered findings based on disputed or undisputed facts. *Id. Levi Strauss* does not preclude the district court from determining likelihood of confusion as a matter of law, either through dismissal or

summary judgment. *See Newton v. Thomason,* 22 F.3d 1455, 1459 (9th Cir.1994).

## The District Court's Determination of No Likelihood of Confusion

■ Murray contends that the district court erred in finding the "America Speaks" and "America's Talking" service marks were unrelated and there was no likelihood of consumer confusion as a matter of law.

■ A likelihood of confusion exists when a consumer viewing a service mark is likely to purchase the services under a mistaken belief that the services are, or associated with, the services of another provider. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). The confusion must "be probable, not simply a possibility." *Id.* If goods or services are totally unrelated, there is no infringement because confusion is unlikely. *AMF v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979).

Taking the facts alleged by Murray to be true, we agree with the district court that the parties' services are unrelated and there is no likelihood of confusion. Murray conducts "man-on-the-street" consumer surveys and sells his services to business clients for use in television commercial advertising. He does not produce network television programming. By contrast, CNBC's "America's Talking" network offers talk-show television programming to cable television viewers. CNBC's "polling" consists of allowing viewers to respond to questions by calling telephone numbers, the results of which are occasionally distributed to the news media. Murray does not allege CNBC has conducted polling or market analysis for advertisers or related to commercial products. He does not claim CNBC has ever sold any polling or marketing services to anyone. In fact, Murray does not contend he and CNBC share any customers or potential customers. Because the parties' services are unrelated, there is no likelihood of consumer confusion as a matter of law. *See Toho,* 645 F.2d at 790–791.

## Reverse Confusion Claim

■ Reverse confusion occurs when a trademark infringer so saturates the market with promotion of his trademark that consumers come to believe that the infringer, rather than the plaintiff, is the source of the trademarked product. *Libman Co. v. Vining*

*Industries,* 69 F.3d 1360, 1362 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1878, 135 L.Ed.2d 173 (1996). This Circuit has not yet formally recognized a cause of action for reverse confusion, although the theory was referenced in *Americana Trading, Inc. v. Russ Berrie & Co.,* 966 F.2d 1284, 1287 (9th Cir.1992).

■ Murray failed to allege sufficient facts to state a claim for reverse confusion under the Lanham Act. He does not contend that CNBC saturated the market with advertising concerning its interactive polling activities. He does not argue that anyone has confused CNBC for the "Shell Answer Man" or mistakenly asked CNBC to conduct surprise interviews of Maxwell House coffee drinkers. Because Murray has failed to plead a cognizable claim for reverse confusion, we need not reach the issue of whether, and under what circumstances, this Circuit will recognize a theory of reverse confusion.

**AFFIRMED.**